1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MN INVESTMENT INC., et al., | Case No. 22-cv-02814-LB |
| Plaintiffs, | |
| v. | **AMENDED ORDER REGARDING MOTION TO DISMISS** |
| DO NGUYEN, et al., | Re: ECF No. 8 |
| Defendants. | |

### INTRODUCTION

The plaintiffs (two corporations and an individual who is their sole shareholder) sued the defendants (individuals, a corporation, and a limited-liability company) in state court for claims (such as fraud and breach of contract) relating to misrepresentations that the defendants allegedly made to induce the plaintiffs' investments.[1] The defendants removed the case to federal court and then moved to dismiss for lack of personal jurisdiction and improper venue, arguing that they are Texas citizens who conduct their activities in Texas.[2] The plaintiffs asked for transfer of the case

---

[1] Compl. – ECF No. 1-1 at 12–21. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 8; Am. Notice of Removal – ECF No. 34.

AMENDED ORDER – No. 22-cv-02814-LB

1    to the Southern District of Texas if the court concludes that there is no personal jurisdiction.[3] The

2    defendants asked "[i]n the alternative" for transfer to the Southern District of Texas.[4]

3         There are jurisdictional fact disputes about whether there is personal jurisdiction for

4    defendants Do Nguyen and Amour International. The court thus ordered jurisdictional discovery at

5    the August 18, 2022, hearing. The plaintiffs conceded, and the parties stipulated, that there is no

6    personal jurisdiction over the other defendants (Alex Nguyen, Mira Song, and D & A Commercial

7    Investments). The court dismisses them for lack of personal jurisdiction (and also orders that

8    dismissal based on the briefs and arguments). At the hearing, the parties agreed to engage in the

9    court's ADR process before conducting jurisdictional discovery.

10

11                                        **STATEMENT**

12   **1.  General Allegations in the Complaint About the Claims**

13        Defendant Do Nguyen allegedly made misrepresentations to induce the plaintiffs (Morgan

14   Nguyen and her corporations MN Investment and M International) to invest $540,000 in defendant

15   Amour International. On October 15, 2017, eight days before Amour was formed, Mr. Nguyen

16   solicited the investment allegedly by promising the plaintiffs (1) thirty-five percent of Amour's

17   Series A common stock, (2) a management role and a seat on Amour's board of directors for Ms.

18   Nguyen, (3) a profit-sharing arrangement for the plaintiffs as common stockholders, and (4) the

19   ability to have Mr. Nguyen repurchase their interests in Amour after Amour became profitable.

20   "Said representations were false and known to be false by [Mr.] Nguyen when made."[5] In reliance

21   on the misrepresentations, MN Investment invested $350,000 in Amour, and M International

22

23

24

25

---

26   [3] Opp'n – ECF No. 26 at 3.

27   [4] Resp. to Mot. to Extend Time – ECF No. 24 at 10.

28   [5] Compl. – ECF No. 1-1 at 13–14 (¶¶ 8–10); Certificate of Formation, Ex. C to Am. Notice of Removal – ECF No. 34-3 at 7–8.

United States District Court
Northern District of California

invested $190,000.[6] Amour then issued fifty percent of Amour's Series A common stock and twenty-five percent of its Series B common stock to MN Investment and M International "jointly."[7]

Other than issuing the common stock, Mr. Nguyen did not deliver on his promises. For example, on January 20, 2020, he entered into an oral agreement with Ms. Nguyen to return the investments in January 2021 in exchange for the assignment of the corporations' interest in Amour.[8] Mr. Nguyen "breached this agreement on January 31, 2021, when he failed to return the investments as agreed despite [Amour's] then being profitable."[9] As to Ms. Nguyen's board seat, sometime "[d]uring the period from October 15, 2017 through February 28, 2021," Mr. Nguyen removed Ms. Nguyen from Amour's board "with no notice or cause."[10] And no profits were shared with the plaintiffs, even though Mr. Nguyen "distributed $2,000,000 in profits [to other shareholders] during the period from October 2017 to February 28, 2021."[11]

There are three other defendants: Alex Nguyen, Mira Song, and D & A Commercial Investments LLC. Alex is Mr. Nguyen's son, and Ms. Song is Alex's former girlfriend. Mr. Nguyen made payments to, and purchased homes for, Alex and Ms. Song using funds from Amour.[12] He also paid "excessive salaries."[13] Also, Ms. Nguyen lent $15,000 to Alex on October 15, 2017, but Alex never repaid her.[14] As for D & A Commercial Investments, Mr. Nguyen used funds from Amour to fund and operate it.[15]

---

[6] Compl. – ECF No. 1-1 at 14 (¶¶ 9–10).

[7] *Id.* at 20 (¶ 40).

[8] *Id.* at 14 (¶ 11).

[9] *Id.* at 15 (¶ 12).

[10] *Id.* at 19 (¶ 35).

[11] *Id.* at 20 (¶¶ 41–43).

[12] *Id.* at 15 (¶ 13).

[13] *Id.* at 19 (¶ 35).

[14] *Id.* at 20 (¶¶ 46–47).

[15] *Id.* at 19 (¶ 35).

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2. Facts Relevant to Personal Jurisdiction

For diversity purposes, the defendants are all citizens of Texas: the individuals reside and work there, and the companies are Texas corporations.[16]

The complaint has the following allegations relevant to personal jurisdiction. Amour International has an office in Morgan Hill, California, where it "transacts business under the fictitious firm name . . . of Amour Nails."[17] (In her declaration, Ms. Nguyen adds that Amour "operate[d] a division of its business in Morgan Hill, California known as Amour Nailz, which sold [Amour's] beauty products in California."[18])

On October 15, 2017, in an in-person meeting with Ms. Nguyen in Alameda County, Mr. Nguyen said the following to induce the investments: (1) if Ms. Nguyen invested $540,000, then she would receive a thirty-five percent interest in Amour's series A common stock, be a board member, and have a voice in management and control of Amour as a member of its board of directors; and (2) Ms. Nguyen would share in Amour's profits.[19] When Mr. Nguyen entered into an oral contract with MN Investment and M International (through Ms. Nguyen) on January 20, 2020, she was in California, and the plaintiffs suffered damages here.[20]

Mr. Nguyen has commingled his funds with the funds of Amour and D & A Commercial Investments. He has caused the corporations to (1) not hold director or shareholder meetings, (2) pay his personal expenses, including his purchases of a Ferrari and a Lamborghini, and (3) "make unwarranted payments to his son defendant Alex Nguyen and his former girlfriend, Mira Song[,] and his personal expenses consisting of after-hours entertainment and the purchase of homes for Alex Nguyen, Mira Song, and his mother."[21] Alex Nguyen and Mira Song "each acted pursuant to a joint enterprise designed and intended to cause each side to aid and abet Do Nguyen to

---

[16] Am. Notice of Removal & Exs. – ECF Nos. 34 to 34-5; Compl. – ECF No. 1-1 at 12–13 (¶¶ 1–5).

[17] Compl. – ECF No. 1-1 at 13 (¶ 6).

[18] M. Nguyen 6/24/22 Decl. – ECF No. 27 at 2–3.

[19] Compl. – ECF No. 1-1 at 13–14 (¶ 9a–b).

[20] *Id.* at 14–15 (¶ 11).

[21] *Id.* at 15 (¶ 13).

1  perpetrate a fraud on MN Investment[] and M International resulting in each becoming unjustly

2  enriched at the expense of" Ms. Nguyen.[22]

3      The parties submitted facts regarding personal jurisdiction: (1) Mr. Nguyen in an affidavit

4  signed May 16, 2022; (2) Ms. Nguyen in a declaration signed June 24, 2022; and (3) Mr. Nguyen

5  in an affidavit signed July 6, 2022.[23]

6      In his May 2022 affidavit, Mr. Nguyen said the following.

7      All defendants live in Harris County, Texas, and the corporate defendants D & A Commercial

8  Investments and Amour International are Texas corporations. Mr. Nguyen is the President of both

9  corporations. Amour is a manufacturing facility that operates in a building owned by D & A. The

10  building, the company records, the manufacturing equipment, and Amour's inventory are all in

11  Harris County, Texas. The CPA and attorneys that work for the defendants are there too. The

12  plaintiffs invested money with Amour. There are no shareholder agreements, the plaintiffs did not

13  make a loan and instead made a capital contribution, and "the terms and conditions were

14  negotiated in Harris County, Texas."[24]

15      In her June 2022 declaration, Ms. Nguyen said the following.

16      She has lived in Oakland since at least 2017, when Mr. Nguyen solicited the investments, to

17  the present. In 2017, Mr. Nguyen "solicited [her] to invest in a startup corporation to be named

18  and was [l]ater named Amour International, when it was later formed as a Texas [c]orporation."

19  "The solicitation for investment was made by phone and email to [her] in California, and all

20  representations regarding the formation of the corporation and [her] rights and the right[s] of the

21  two companies [she] owned [—] MN Investment Inc. and M International [—] were made to [her]

22  in California." In reliance on Mr. Nguyen's email representations made to her (while she was in

23  California), she "caused" MN Investment to invest $350,000 and M International to invest

24  $190,000 in Amour. She sued them to reclaim her investment. Mr. Nguyen told her in California

25

26  [22] *Id.* (¶ 14).

27  [23] D. Nguyen 5/16/22 Aff. – ECF No. 8 at 9–10; M. Nguyen 6/24/22 Decl. – ECF No. 27; D. Nguyen 7/6/22 Aff. – ECF No. 33.

28  [24] D. Nguyen 5/16/22 Aff. – ECF No. 8 at 9.

that she "could have this investment returned to [her] with interest once the company was profitable." "All of the events relating to the investment and the claims made in the lawsuit were in California[:] [the defendant's] representations, [her] reliance on defendant $540,000 from California [sic], [and] [the defendant's] failure to honor the contract through returning the $540,000 when the company was profitable."[25]

Amour "was formed by an [a]ttorney in Sacramento."[26] (Amour's Certificate of Formation shows its organizer's address in Palo Alto.[27]) Amour "operate[d] a division of its business in Morgan Hill, California[,] known as Amour Nailz, which sold [Amour's] beauty products in California."[28]

In his July 2022 affidavit, Mr. Nguyen said the following.

He reiterated that the individual defendants lived in Texas, and the corporations are Texas corporations that were incorporated "prior to the acts of which Plaintiff complains through to the present date." He is the President, Vice President, Secretary/Treasurer, CEO, and COO of Amour. Amour "is a manufacturing and distribution facility catering to the nail salon industry." He reiterated that Amour operates its business in a building owned by D & A Commercial Investments in Katy, Texas, and that Amour's company records, manufacturing equipment, inventory, accountants, and attorneys are in Harris County, Texas.[29]

Ms. Nguyen "is incorrect when she declares that . . . Amour is the alter ego of" Mr. Nguyen. "She provides . . . no evidence to support her contention as to the alter ego status of Do Nguyen."[30]

Mr. Nguyen owns 5,916,000 shares of Class A stock in Amour, which is fifty-eight percent of the outstanding shares.[31] He is responsible for managing Amour's business operations, manufacturing, sales, books and records, and financing. His son Alex is a warehouse employee,

---

[25] M. Nguyen 6/24/22 Decl. – ECF No. 27 at 2.

[26] *Id.*

[27] Certificate of Formation, Ex. C to Am. Notice of Removal – ECF No. 34-3 at 8.

[28] M. Nguyen 6/24/22 Decl. – ECF No. 27 at 2–3

[29] D. Nguyen 7/6/22 Aff. – ECF No. 33 at 2.

[30] *Id.*

[31] *Id.*

had nothing to do with Amour's formation, and has no authority except that related to the warehouse and inventory. Mira Song is an Amour employee who works in the office, had nothing to do with Amour's formation, and has no decision-making authority.[32]

Mr. Nguyen has known Ms. Nguyen for eight years. They are business acquaintances and on occasion discussed the nail-salon industry. During their eight-year relationship, Ms. Nguyen told Mr. Nguyen that if he ever formed a wholesale and distribution business providing products for nail salons, she would be interested in having shares in the corporation. He agreed to contact her if that happened. When he decided to form Amour, he called Ms. Nguyen, and they "discussed the opportunity for her to own shares in Amour pursuant to her previous request." He never solicited Ms. Nguyen or her corporations to invest in Amour and instead "was merely responding to her previous request to participate and own stock in just such a corporation."[33]

Ms. Nguyen owns no stock in Amour. M International own 2,958,000 shares of class A stock (twenty-nine percent of the outstanding shares), and MN International owns 1,470,000 shares of class B stock (fifteen percent of the outstanding shares).[34]

Mr. Nguyen told Ms. Nguyen that "documents would need to be prepared in connection with the purchase of stock in Amour." Before and after the purchase of stock by Ms. Nguyen's companies, Mr. Nguyen "requested on numerous occasions for her to provide [him] documents to memorialize [their] agreement." She said that her attorney was preparing them, but she never provided "any documentation as promised."[35]

Ms. Nguyen "is mistaken when she describes her purchase of stock in Amour as having the same characteristics of a loan." It was not a loan, and the money would be returned only if Amour was sold, which would result in a pro rata distribution to MN International and M International. He did tell Ms. Nguyen that if Amour became profitable, then her companies would receive their pro rata share of profits "(similar to a dividend)." There have been no profits, as the tax returns

---

[32] *Id.* at 2–3.

[33] *Id.* at 3.

[34] *Id.*

[35] *Id.* at 4.

United States District Court
Northern District of California

(sent every year to Ms. Nguyen) show and as he told her. He has offered to provide any documents or records for her review and invited her to come to the main office in Katy, Texas, with her attorney and/or CPA to review the corporate records and documents.[36]

Mr. Nguyen has personally guaranteed $4 million in loans to individual investors.[37]

"There is no connection whatsoever between Amour and [the] nail-salon business known as Amour Nailz."[38] (But the defendants filed a shareholder list showing that an entity known as Amour Nailz previously owned Series B stock in Amour.[39] California Secretary of State records show that an entity known as Amour Nailz, LLC was formed in 2016, with an address in Morgan Hill.[40] That entity's service-of-process agent, Jasmine Quach, shares the same name as Amour's sole initial board member.[41])

### 3. Relevant Procedural History

The complaint asserts eight claims, numbered as follows: (1) fraud (MN Investment against all defendants), (2) fraud (M International against all defendants), (3) breach of contract (MN Investment against Mr. Nguyen) (based on Mr. Nguyen's failure to return MN Investment's $350,000 investment), (4) breach of contract (M International against all defendants) (based on Mr. Nguyen's failure to return M International's $190,000 investment), (5) breach of fiduciary duty (MN Investment against Mr. Nguyen), (6) breach of fiduciary duty (M International against Mr. Nguyen), (7) breach of contract (MN Investment against Mr. Nguyen) (based on Mr.

---

[36] *Id.*

[37] *Id.* at 5.

[38] *Id.*

[39] Shareholder List, Ex. 1 to Am. Resp. to Mot. to Extend Time – ECF No. 35-1.

[40] Articles of Organization of a Ltd. Liab. Co., Cal. Sec'y of State (Apr. 1, 2016), https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/16320802304423603425309110521320920 7141123158023. The court can judicially notice public-record documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

[41] *Id*; Certificate of Formation, Ex. C to Am. Notice of Removal – ECF No. 34-3 at 7.

Nguyen's failure to share Amour's profits with the plaintiffs), and (8) money had (Ms. Nguyen against Alex Nguyen) (based on the $15,000 loan).[42]

The court has diversity jurisdiction under 28 U.S.C. § 1332.[43] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[44] The defendants moved to dismiss the complaint for lack of personal jurisdiction (styling it as a motion for improper venue but arguing lack of personal jurisdiction). The plaintiffs opposed the motion and also filed a case-management statement that they would dismiss certain defendants for lack of personal jurisdiction. The parties stipulated to the dismissal of those defendants — Alex Nguyen, Mira Song, and D & A Commercial Investments — at the hearing on August 18, 2022. The plaintiffs also asked to transfer the case to Texas if the court holds that there is no personal jurisdiction over Mr. Nguyen and Amour.[45] The defendants also asked for that transfer.[46]

## ANALYSIS

There is no personal jurisdiction over Alex Nguyen, Mira Song, or D & A Commercial Investments, as the plaintiffs concede. The court thus dismisses them for lack of personal jurisdiction. The court orders jurisdictional discovery about whether there is personal jurisdiction over Do Nguyen and Amour. Because the parties submitted facts about jurisdiction, and in aid of their mediation efforts, this order summarizes the jurisdictional landscape to date and flags cases that the parties may want to consider in any round-two briefing.

### 1.  Personal Jurisdiction

"In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

---

[42] Compl. – ECF No. 1-1 at 15–20 (¶¶ 15–48).

[43] Order – ECF No. 31; Am. Notice of Removal & Exs. – ECF Nos. 34 to 34-5.

[44] Consents – ECF Nos. 14, 21.

[45] Mot. – ECF No. 8; Resp. to Mot. to Extend Time – ECF No. 24 (describing the motion to dismiss as one "for lack of personal jurisdiction"); Opp'n – ECF No. 26; Pls.' Separate Case-Mgmt. Statement – ECF No. 39 at 1–2.

[46] Resp. to Mot. to Extend Time – ECF No. 24 at 10.

United States District Court
Northern District of California

bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2001).

"Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "Uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (cleaned up). But courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at 1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

In diversity cases, "federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (cleaned up). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2005) (analyzing California and federal long-arm statutes). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, [a court's] inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211 (cleaned up). The due-process inquiry is whether the defendant has sufficient minimum contacts with the forum such that the assertion of jurisdiction in the forum "'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach*, 453 F.3d at 1154–55 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).

There are two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). The plaintiffs allege only specific jurisdiction.

"In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (cleaned up). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (cleaned up). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.*" Id.* The Ninth Circuit has a three-prong test to assess whether a defendant has sufficient contacts with the forum to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Id.* at 1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

The plaintiff may satisfy the first prong by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum." *Washington Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017); *accord Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (the first prong may be satisfied by purposeful availment, purposeful direction, "or by some combination thereof"). Although the Ninth Circuit has "sometimes used these two terms in shorthand fashion as a single concept, they are, in fact, two distinct concepts." *Washington Shoe Co.*, 704 F.3d at 672 (cleaned up).

With respect to the first prong, courts apply a "purposeful availment" analysis in suits sounding in contract or involving business transactions, and a "purposeful direction" analysis (also

1  known as the effects test) in suits sounding in tort (including claims of fraud). *Schwarzenegger v.*

2  *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *RHUB Commc'ns, Inc. v. Karon*, 16-

3  cv-06669-BLF, 2017 WL 3382339, at *5 (N.D. Cal. Aug. 7, 2017). The claims here are contract

4  and tort claims. Both the "purposeful availment" and "purposeful direction" analyses are relevant.

5  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107

6  (9th Cir. 2020). Also, if the court has personal jurisdiction over a defendant with respect to one

7  type of claim, it has pendent personal jurisdiction over that defendant with respect to the other

8  type, so long as all claims arise out of a common nucleus of operative facts. *Lynwood Invs. CY*

9  *Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1198915, at *12 (N.D. Cal. Mar. 30, 2021).

10  A defendant's purposeful availment of the privilege of doing business in a forum requires "some

11  type of affirmative conduct" that "allows or promotes the transaction of business within the forum

12  state." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988); *Schwarzenegger*, 374

13  F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing

14  business in a forum state typically consists of evidence of the defendant's actions in the forum, such

15  as executing or performing a contract there."); *Picot*, 780 F.3d at 1212 (contract alone does not

16  automatically establish minimum contacts); *Long v. Authentic Athletix, LLC*, No. 16-cv-03129-JSC,

17  2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016) (contract is an intermediate step that "connects

18  prior negotiations with future consequences, the real object of a business transaction").

19  In tort cases, courts in the Ninth Circuit "typically inquire whether a defendant purposefully

20  direct[ed] his activities at the forum state, applying an 'effects' test that focuses on the forum in

21  which the defendant's actions were felt, whether or not the actions themselves occurred within the

22  forum." *Washington Shoe Co.*, 704 F.3d at 672–73 (cleaned up). Under the effects test, purposeful

23  direction exists when a defendant commits an act outside the forum that was intended to and does in

24  fact cause injury in the forum, meaning, the defendant must (1) commit an intentional act (2)

25  expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered

26  in the forum. *Calder v. Jones*, 465 U.S. 783, 788–90 (1984); *Washington Shoe Co.*, 704 F.3d at 673.

27  The effects test focuses on "the forum in which the defendant's actions were felt, whether or not the

28  actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228. "However, referring to

the *Calder* test as an effects test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong — the effects prong — holding that something more is needed in addition to a mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1156 (cleaned up).

There is no real dispute that the non-residents Alex Nguyen, Mira Song, and D & A Commercial Investments have no connection with the forum. The plaintiffs confirmed at the hearing that they were dismissing those defendants, and the parties stipulated to dismiss them. The court dismisses them for lack of personal jurisdiction (and also orders that dismissal based on the briefs and arguments).

The remaining defendants are Do Nguyen and Amour. The issue is whether, under the first prong of the specific-personal-jurisdiction analysis, they have sufficient contacts, either because they purposefully directed their activities to California or purposefully availed themselves of the privilege of conducting activities in California. The facts are disputed. Resolving conflicts between the parties' affidavits in the plaintiffs' favor, the contacts with the forum are that Mr. Nguyen was in Alameda County on October 15, 2017, when he made the representations that induced the investments, and then communicated with Ms. Nguyen by email and telephone, all while she was in California. He also has the company Amour Nailz in Morgan Hill, a nail salon that sold Amour's beauty products, previously owned Series B stock in Amour, and has an agent for service of process with the same name (Jasmine Quach) as Amour's sole initial board member. And Amour hired California counsel to be its incorporator. Finally, Mr. Nguyen and Amour allegedly maintained a business relationship with, and continuing obligations to, the plaintiffs.[47]

As a threshold issue, Mr. Nguyen and Amour's California contacts are imputed to each other. As a board member and officer, Mr. Nguyen acted as Amour's agent, and he also acted as a corporate promoter before Amour was formed. These acts are imputed to Amour. *See, e.g.*, *Martensen v. Koch*, 942 F. Supp. 2d 983, 993 (N.D. Cal. 2013) ("For purposes of personal

---

[47] Compl. – ECF No. 1-1 at 13–14 (¶ 9); M. Nguyen 6/24/22 Decl. – ECF No. 27 at 2–3; Certificate of Formation, Ex. C to Am. Notice of Removal – ECF No. 34-3 at 8; Articles of Organization of a Ltd. Liab. Co., Cal. Sec'y of State (Apr. 1, 2016), https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/1632080230442360342530911052132092 07141123158023.

1    jurisdiction, the actions of an agent are attributable to the principal."); *Laub v. Horbaczewski*, No.

2    LA CV17-6210 JAK (KS), 2018 WL 5880950, at *6 (C.D. Cal. Mar. 16, 2018) (as between a

3    corporate promoter and a later-formed corporation, there is an "agency relationship permitting the

4    acts of the promoter to constitute, in effect, acts done by the corporation," where the corporation

5    later ratifies the acts). And Amour's contacts are imputed to Mr. Nguyen because, as Amour's sole

6    board member and the holder of every officer position in Amour, Mr. Nguyen was the "guiding

7    spirit" behind Amour's acts. *See, e.g.*, *Matsunoki Grp., Inc. v. Timberwork Or., Inc.*, No. C 08-

8    04078 CW, 2009 WL 1033818, at *3–4 (N.D. Cal. Apr. 16, 2009).

9         Generally, the court analyzes the purposeful-availment and purposeful-direction elements

10    separately. The court reserves that more thorough analysis until any round-two motion but sets out

11    below some of the relevant cases addressing the prong-one analysis.

12         In *Laub*, the court analyzed an analogous situation under a purposeful-availment theory. 2018

13    WL 5880950, at *5. Two California-based plaintiffs sued a New York resident and his Delaware

14    corporation for breach of contract, fraud, and breach of fiduciary duty. *Id.* at *1. The plaintiffs had

15    conceived a television drone-racing league and were introduced to the individual defendant as a

16    potential investor. *Id.* at *2. In subsequent meetings, including several in California, the defendant

17    allegedly fraudulently misrepresented that the parties would hold an equal interest in the as-yet-

18    unformed corporation. *Id.* at *2–3, 12. The plaintiffs alleged that the discussions resulted in an oral

19    contract. *Id.* at *1. The defendant then incorporated the league in Delaware without telling the

20    plaintiffs and without giving them any ownership interest. *Id.* at *3. During the parties' subsequent

21    contacts, the plaintiffs provided creative input for the league. *Id.* The corporation also had some

22    California employees and used a California advertising agency. *Id.* at *4.

23         Personal jurisdiction over the individual defendant was not contested. Instead, the issue was

24    personal jurisdiction over the corporation. The court held that the corporation purposefully availed

25    itself of the privilege of conducting activities in California because (1) it made the alleged

26    misrepresentations in California, (2) the plaintiffs subsequently performed the contract in

27    California by providing creative input for the league, and (3) the corporation had California

28    employees and an advertising agency. *Id.* at *6–8.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Here, Mr. Nguyen held a discussion with Ms. Nguyen in California "during which the terms of the agreement were discussed." *Id.* at *7. In addition, the defendants engaged in an ongoing business relationship with the plaintiffs, shipped their beauty products to Amour Nailz in California, and hired California counsel. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459–60 (9th Cir. 2007) (a stream-of-commerce contact is relevant where the defendant "sells . . . products directly into" the forum); *Lynwood Invs. CY Ltd. v. Konovalov*, No. 20-CV-03778-LHK, 2021 WL 1198915, at *11 (N.D. Cal. Mar. 30, 2021) ("Courts have concluded that hiring an attorney in the forum can support a finding of personal jurisdiction."). These contacts are relevant to the first prong of the specific-personal-jurisdiction analysis. (Mr. Nguyen contested some of the facts in his declaration and at argument, which in part is why the court ordered jurisdictional discovery.)

As to the tort claims, a similar case is *Abokasem v. Royal Indian Raj Int'l Corp.*, No. C-10-01781 MMC, 2011 WL 635222 (N.D. Cal. Feb. 11, 2011). There, the India-based corporate and individual defendants solicited the California-based plaintiffs to make down payments for housing units in a new resort in India. *Id.* at *1. The defendants made a series of misrepresentations to induce the investments, including during meetings in California, and the parties entered into contracts by which the plaintiffs were entitled to have their deposits refunded if the defendants did not obtain the necessary clearances from the Indian government. *Id.* at *1–2. The plaintiffs sued for breach of contract, fraud, and breach of fiduciary duty. *Id.* at *2.

The court applied the *Calder* effects test and held that it had personal jurisdiction over the corporate defendants because they (1) made their advertisements available to Californians (including via their websites), (2) held meetings with the plaintiffs in California to discuss potential investments, (3) "reiterated [their] misrepresentations in telephone conversations and written correspondence with [the] plaintiffs," and (4) actually entered into contracts with the plaintiffs. *Id.* at *4. "[The] plaintiffs sufficiently allege[d] that [the defendants], through such contacts, induced the California plaintiffs to rely on [the defendants]'s misrepresentations and enter into contracts that were at least partially negotiated in California, and that the resulting breach of those contracts caused harm [the defendants] knew was likely to be suffered in California." *Id.*

1    The court also held that it had personal jurisdiction over the individual defendant, who was

2    Chairman of the Board, CEO, and the sole director and officer. *Id.* at *5. He traveled to California

3    to conduct contract negotiations, made the misrepresentations, and otherwise directed all of the

4    relevant activity by the corporate defendants. *Id.*

5    The issue raised by *Abokasem* is whether the defendants' conduct was aimed expressly at

6    California, given Mr. Nguyen's travel to California to solicit the investments (and his alleged

7    misrepresentations then) and his subsequent communications aimed at Ms. Nguyen in the forum. *Id.*

8    at *4–5; *see also, e.g.*, *Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *4

9    (N.D. Cal. July 6, 2015) (no express aiming where the defendant's conduct "did not involve

10    entering California, contacting anyone in California, or otherwise reaching out to California").

11    Similarly, in *Carroll Shelby Licensing, Inc. v. U.S. Restoration, LLC*, the defendant "traveled to

12    California to negotiate" a contract, actually entered into the contract, corresponded with the

13    plaintiffs "while knowing they were located in California," and used the plaintiffs' trademarks

14    without permission. No. 2:17-cv-00737-ODW (SSx), 2017 WL 4142158, at *4 (C.D. Cal. Sept. 15,

15    2017). The court held these contacts sufficient to establish personal jurisdiction.

16    When courts find personal jurisdiction in misrepresentation cases, there are direct

17    misrepresentations to California-based persons. *See, e.g.*, *Cisco Sys. Inc. v. ST Microelectronics,*

18    *Inc.*, No. 14-cv-03236-RMW, 2015 WL 5138556, at *1, 4 (N.D. Cal. Sept. 1, 2015) (Italian chip

19    manufacturer made direct misrepresentations to the plaintiff's California employees); *Core Prods.,*

20    *Inc. v. Dove Air, Inc.*, No. CV-F-05-1118 REC DLB, 2006 WL 8458539, at *9 (E.D. Cal. Jan. 5,

21    2006) (the defendants made misrepresentations to induce the plaintiff to make a purchase, and the

22    defendant knew that the plaintiff "would rely on the misrepresentation in California"); *Peacock v.*

23    *Willis*, No. CV F06-432 AWI LJO, 2006 WL 3060134, at *10 (E.D. Cal. Oct. 27, 2006) (the

24    defendant made misrepresentations to induce the plaintiff to make a purchase; no jurisdiction only

25    because no harm was suffered in California). The plaintiffs alleged that Mr. Nguyen made

26    misrepresentations when he was in California and in subsequent communications to the

27    California-based plaintiff.

28

United States District Court
Northern District of California

1    In addition to expressly aiming acts at the forum, a defendant's conduct must be intentional

2    and must cause harm that the defendant knows is likely to be suffered in the forum. *Calder*, 465

3    U.S. at 788–90. That inquiry turns on whether Mr. Nguyen's alleged misrepresentations were

4    intentional and caused harm to the California-based plaintiffs that he knew was likely to be

5    suffered in California.

6    Because the court ordered jurisdictional discovery, this analysis is preliminary, but it may be

7    useful for settlement negotiations or for any motion. Also, there are other cases that the court has

8    not addressed, including *Walden v. Fiore*, 571 U.S. 277 (2014), and *Senne v. Kansas City Royals*

9    *Baseball Corp.*, 105 F. Supp. 3d 981, 1022–23 (N.D. Cal. 2015). Both are relevant to the express-

10   aiming requirement, which requires conduct aimed at the forum, and the prong-two requirement of

11   forum-related activities. *Walden*, 571 U.S. at 283–91; *Senne*, 105 F. Supp. 3d at 1028, 1040–43.

12   The next issue is whether the plaintiffs' claims arise out of or are related to the defendants'

13   contacts with the forum. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026

14   (2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021). "In other words, there

15   must be an affiliation between the forum and the underlying controversy, principally, an activity or

16   an occurrence that takes place in the forum State and is therefore subject to the State's regulation."

17   *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up). Ninth Circuit precedents before *Ford*

18   required a showing of but-for causation. *Ayla*, 11 F.4th at 983 n.5 (collecting cases). *Ford* now

19   forecloses the exclusive use of that narrower test. *Id.* In *Ford*, "the Supreme Court emphasized that

20   a strict causal relationship is not required." *Id.* (citing *Ford*, 141 S. Ct. at 1026). The *Ford* Court

21   held, "None of our precedents has suggested that only a strict causal relationship between the

22   defendant's in-state activity and the litigation will do." *Ford*, 141 S. Ct. at 1026. Thus, the earlier

23   precedents now "permit but do not require a showing of but-for causation to satisfy the nexus

24   requirement." *Ayla*, 11 F.4th at 983 n.5 (collecting cases). The court defers consideration of this

25   prong of the specific-jurisdiction analysis.

26   If the plaintiffs establish the first two prongs, then the burden shifts to the defendants to

27   establish "a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780

28

United States District Court
Northern District of California

F.3d at 1211–12. To determine whether the exercise of jurisdiction is reasonable, the Ninth Circuit has identified seven factors:

> (1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (cleaned up). The factors should be balanced against each other and no single factor is dispositive. *Id.* The court defers consideration of this prong too.

At the hearing on August 18, 2022, the court ordered jurisdictional discovery based on the defendants' contesting the relevant jurisdictional facts. *See, e.g.*, *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (a court has the discretion to allow a plaintiff to conduct limited jurisdictional discovery, provided there is a colorable basis for it).

## 2.  Venue and Transfer Under 28 U.S.C. § 1404

A case may be brought in (1) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located," (2) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Under Rule 12(b)(3), a defendant may move to dismiss a case for improper venue. After a defendant challenges the venue, it is the plaintiff's burden to show that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In the context of a Rule 12(b)(3) motion, the court need not accept as true all allegations in the complaint, but may consider facts outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The court is, however, "obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

United States District Court
Northern District of California

1    If venue is improper, the court may either dismiss the case without prejudice, or, if it is in the

2  "interest of justice," transfer the case "to any district or division in which it could have been

3  brought." 28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir.

4  1991) (dismissal must be without prejudice). Ordinarily, the interest of justice requires transferring

5  the case to the proper venue rather than dismissing the case. *Baeta v. Sonchik*, 273 F.3d 1261,

6  1264–65 (9th Cir. 2001).

7    Venue is proper here if there is personal jurisdiction. *See, e.g.*, *IBC Aviation Servs., Inc. v.*

8  *Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1013 (N.D. Cal. 2000). If

9  there is venue, then the issue is whether the court nonetheless should transfer the case to the

10  Southern District of Texas.[48] Because jurisdiction is a threshold issue, the court defers

11  consideration of the transfer issue but sets forth the legal standards so that the parties can consider

12  whether the case is more efficiently brought here or in the Southern District of Texas.

13    28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of

14  justice, a district court may transfer any civil action to any other district or division where it might

15  have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of

16  *forum non conveniens*, it was intended to be a revision to, rather than a codification of, the

17  common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349

18  U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of

19  inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood*, 349 U.S. at 32.

20    The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures*

21  *Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Nonetheless, the district court has

22  broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case

23  consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498

24  (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see Westinghouse*

25  *Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

26    Factors that the court may consider include:

27

28  [48] Opp'n – ECF No. 26 at 3; Resp. to Mot. to Extend Time – ECF No. 24 at 10.

(1) [The] plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Lapachet v. Cal. Forensic Med. Grp., Inc.*, No. 16-cv-06959-HSG, 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017) (collecting cases); *see Jones*, 211 F.3d at 498–99 (identifying factors).

This list of factors is not exhaustive. *Lapachet*, 2017 WL 3917209, at *2. And some factors have more weight or less depending on the context. *Id.* For example, generally the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But when judging the weight to be given to the plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum. *Id.* "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice "is entitled to only minimal consideration." *Id.*

In general, the first four factors are private-interest factors, and the last four are public-interest factors. *Bloom v. Express Servs. Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *2–6 (N.D. Cal. Apr. 19, 2011).

Because the court ordered jurisdictional discovery, the court defers the transfer inquiry but makes these observations.

First, the main witnesses appear to be Ms. Nguyen and Mr. Nguyen, and the misrepresentations occurred here or were directed to the California-based Ms. Nguyen. Also, the plaintiffs dismissed the other Texas-based defendants. Even if more witnesses are in Texas, the capacity to conduct depositions by Zoom and the fact that most documents are likely to be stored electronically militates against affording this factor substantial weight. *See id.* at *4 ("Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden.") (cleaned up).

Second, the parties did not address some of the factors. Some appear at best to be neutral.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### 3.   Other Issues

The parties also raised arguments about standing and Rule 11 sanctions.[49]

As for standing, the defendants contend in a short side argument in a supplemental filing that Ms. Nguyen lacks standing to sue Amour because she owns no stock in Amour.[50] The argument is not raised sufficiently for the court to address it. It in any event is moot: Ms. Nguyen was a plaintiff only in claim eight against Alex Nguyen for "money had," apparently for the $15,000 loan to him, and the parties stipulated to his dismissal for lack of personal jurisdiction. The corporate plaintiffs each own stock, and Ms. Nguyen is not a plaintiff for those claims.

The defendants also ask for Rule 11 sanctions on the ground that the plaintiffs misrepresented the facts. For example, the defendants assert that the plaintiffs falsely represented that Amour has a connection with the California entity Amour Nailz.[51] But the shareholder list that the defendants submitted shows that an entity called Amour Nailz used to be a shareholder of Amour.[52] And public records show that the same person was the service-of-process agent for Amour Nailz and the sole initial board member of Amour.[53] The plaintiffs countered at the hearing that the defendants misrepresented the facts too. Jurisdictional discovery will illuminate the dispute. On this record, the court denies the defendants' request for sanctions.

### CONCLUSION

The court orders jurisdictional discovery with two caveats.

One, the parties agreed to mediate the case before conducting jurisdictional discovery. As of August 25, 2022, the parties were in the process of selecting a mediator.[54]

---

[49] Mot. – ECF No. 8; Am. Resp. to Mot. to Extend Time – ECF No. 35.

[50] Am. Resp. to Mot. to Extend Time – ECF No. 35 at 2–3, 10–11.

[51] *Id.* at 7, 13–14.

[52] Shareholder List, Ex. 1 to Am. Resp. to Mot. to Extend Time – ECF No. 35-1.

[53] Articles of Organization of a Ltd. Liab. Co., Cal. Sec'y of State (Apr. 1, 2016), https://bizfileonline.sos.ca.gov/api/report/GetImageByNum/16320802304423603425309110521320920 7141123158023; Certificate of Formation, Ex. C to Am. Notice of Removal – ECF No. 34-3 at 7.

[54] Status Report – ECF No. 45.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

　　　Two, the jurisdictional discovery is limited, as discussed at the hearing, to defendants Do Nguyen and Amour International. The parties must confer on a discovery plan for any discovery allowable under the Federal Rules (such as requests for production, interrogatories, and depositions). They must settle on a schedule, including a briefing schedule, for any renewed motion to dismiss for lack of personal jurisdiction. That briefing schedule must comply with the local rules, meaning it must consist only of an opening motion, an opposition, and a reply, all on the five-week timeline (though the parties can, with court approval, settle on a different briefing schedule that still allows two weeks between the reply brief and a hearing on the ordinary Thursday calendar). N.D. Cal. Civ. L.R. 7-2, 7-3. After fixing their mediation date, the parties must submit the proposed plan and schedule in the form of a stipulation and proposed order. If necessary, the court can adjust the case-management conference (now set for December 15, 2022) to allow the mediation process to take place before jurisdictional discovery. As the court said at the hearing, the parties have known each other for a long time, and it is worth taking a crack at resolving the dispute.

　　　At the motion hearing on August 18, 2022, the parties stipulated to dismiss defendants Alex Nguyen, Mira Song, and D & A Commercial Investments for lack of personal jurisdiction. Technically, Federal Rule of Civil Procedure 41(a)(1)(A) allows (1) plaintiffs to voluntarily dismiss an action without a court order before the defendants serve an answer or move for summary judgment, and (2) the parties to file a signed stipulation of dismissal. The plaintiffs' representations at the hearing and in ECF No. 39 meet the Rule 41(a)(1)(A)(i) standard for a notice of dismissal. In any event, there is no personal jurisdiction over these defendants, as discussed above and as the plaintiffs concede. The court dismisses them for lack of personal jurisdiction.

　　　This resolves ECF No. 8.

　　　**IT IS SO ORDERED.**

　　　Dated: August 30, 2022

_____
LAUREL BEELER
United States Magistrate Judge